**In re HYPERION ENTERPRISES, INC., Debtor.**

**Arnold L. BLASBALG, Trustee, Plaintiff,**

**v.**

**Thomas TARRO, Individually and d/b/a Telesis Financial Service, Defendant.**

Bankruptcy No. 91–12630.
Adv. No. 92–1030.

United States Bankruptcy Court, D. Rhode Island.

Jan. 14, 1993.

Matthew J. McGowan, Salter, McGowan, Swartz & Holden, Inc., Amedeo C. Merolla, Asquith, Merolla, Anderson Archetto & Kane, Providence, RI, for Trustee.

Robert D. Wieck, MacAdams & Wieck Inc., Providence, RI, for defendant.

David J. McOsker, McOsker, Davignon & Waldman, Providence, RI, for Modern Plastics, Inc.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on December 2, 1992 on three separate pleadings: (1) Motion of creditor Thomas Tarro (Tarro) to adjudge the Trustee in contempt; (2) Trustee's Petition for Instructions; and (3) Motion of Modern Plastics for relief from stay. At the close of the hearing, Tarro submitted a legal memorandum addressing the application of the doctrine of res judicata regarding his motion to adjudge the Trustee in contempt. Because this was the Trustee's first exposure to Tarro's memorandum, he was given one week to respond. Since that time, and for reasons totally bewildering to us, the litigants have embarked on a course of filing responding and counter-responding pleadings which, other than to greatly contradict the verbal representations made at the December 2 hearing, as well as at the hearing on the merits, do little to assist the Court in deciding the matters before us. In the circumstances, we will be guided by our own understanding of the record in this proceeding, and based upon the express and unequivocal stipulations[1] by Tarro's counsel, it is our conclusion that the *only* legal issue here for determination is whether $17,131.77 in excess funds presently held by the Trustee from the Applause receivables, after payment of the *undisputed*[2] $88,451.73 to Modern Plastics, belongs to Tarro or to the Trustee as property of the estate.

Thus, the narrow legal issue to be resolved is whether the doctrine of res judicata precludes the Trustee from presenting evidence, at this time, to challenge Tarro's right to any assets of the Debtor's estate, including the $17,131.37 in excess funds recovered from the Applause receivable?

As Tarro points outs, the doctrine of res judicata is composed of two aspects: (1) claim preclusion and (2) issue preclusion (collateral estoppel). *Dennis v. R.I. Hosp. Trust Nat'l Bank,* 744 F.2d 893, 898 (1st Cir.1984). " 'Claim preclusion' bars relitigation of any issue [claim] that was, or *might have been,* raised in respect to the subject matter of the prior litigation." *Id.* at 898 (emphasis in original) (citing *Carillo v. Moran,* 463 A.2d 178, 182 (R.I.1983) (other citations omitted). Collateral estoppel on the other hand, "bars relitigation of any factual or legal issue that was *actually* decided in previous litigation 'between the parties, whether on the same or a different claim.' " *Id.* at 899 (citing *Restatement (Second) of Judgments* § 27 (1982) (emphasis in original); *Mastracchio v. Ricci,* 498 F.2d 1257, 1260 (1st Cir.1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975), *quoting Cardillo v. Zyla,* 486 F.2d 473, 475 (1st Cir.1973). The First Circuit has interpreted this language to mean that "[a]n issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached." *Dennis v. R.I. Hosp. Trust Nat'l Bank,* 744 F.2d at 899 (emphasis in original).

1. At hearing, Tarro's counsel, Robert D. Wieck, Esq., plainly stated that his client claimed no interest in any money due Modern Plastics under its superior security interest in the Applause receivables. In addition, Mr. Wieck stated that Tarro was claiming no interest in any preference recoveries obtained by the Trustee on behalf of the Estate.

2. By "undisputed" we do not mean to exclude or rule upon the merits of any potential preference recoveries brought by the Trustee against Modern Plastics. Rather, based upon the December 2, 1992 record (which was supported by the transcript references of the September trial supplied by the Trustee in his most recent filing on the subject), Tarro conceded that he had no interest whatsoever in the Modern Plastics monies and did not dispute Modern Plastics' right to receive $88,451.73 of the $105,000 currently held by the Trustee.

The United States District Court for the District of Rhode Island recently discussed the application of this doctrine to subsequent litigation between the same parties. *DeCosta v. Viacom Int'l, Inc.*, 758 F.Supp. 807 (D.R.I.1991), *rev'd on other grounds*, 981 F.2d 602 (1st Cir.1992).[3] There, the Court aptly stated that:

> The doctrines of res judicata and collateral estoppel are designed to establish a point at which litigation comes to an end. They serve three basic purposes: (1) promoting judicial economy by preventing repetitive litigation; (2) establishing certainty and respect to judgments; and (3) protecting the party relying on the prior adjudication from vexatious litigation.

*Id.* at 810–811 (citing 18 Charles A. Wright, Arthur R. Miller & E. Cooper, *Federal Practice and Procedure* § 4403, at 11–22 (1981 & Supp.1990).

> In addition, the Court made clear that: res judicata and collateral estoppel are not mere technical rules of convenience. Rather, they are expressions of a fundamental public policy favoring repose for both society and litigants.... [T]heir applicability is not affected by the equities of the claim at issue. They represent a determination that claims and/or issues already litigated and decided should be barred no matter how meritorious they appear to be.

*Id.* at 811 (citing *Jeter v. Hewitt*, 63 U.S. (1 How.) 352, 364, 16 L.Ed. 345 (1859)).

■ With this authority in mind, we turn to the facts of the instant case. Our September 11, 1992 Decision and Order represents this Court's full consideration and adjudication of a very contentious and multifaceted six day trial between the very same two parties who are involved in the instant motion—the Chapter 7 Trustee and secured creditor Thomas Tarro. The Trustee now asserts, *after decision*, that certain legal issues between Tarro and the Trustee have not yet been decided and, furthermore, were not even contemplated as part of that litigation. We could not disagree more.

As noted by the parties, in our September 11 Decision numerous references are made to the fact that Tarro was the holder of a security interest in "all of Hyperion's assets, including its machinery, equipment, receivables, general tangibles, intangibles and inventory." *Arnold L. Blasbalg v. Thomas Tarro (In re Hyperion Enterprises, Inc.)*, 144 B.R. 228, 229 (Bankr.D.R.I. 1992). That reference, as well as all of the findings and conclusions contained in that decision are based entirely on the evidence submitted, *and* on the undisputed representations made by the parties, both verbally and in writing.

Throughout the unnecessarily lengthy trial, both sides made it abundantly clear that the *primary* issue was the validity of Tarro's security interest, which if sustained would attach to *all* property of the estate, and it was against this backdrop that the Trustee struggled so extensively to avoid Tarro's secured status. Whether there were specific individual exceptions carved out of Tarro's all-inclusive security, known only to the parties, that fact was *never* disclosed to the Court, and it was our clear understanding that this litigation was intended to and did resolve *all* legal issues between Tarro and the Trustee with respect to Tarro's secured interest in estate property. In fact, we find it almost impossible to understand, in view of the inordinate amount of time spent addressing irrelevant and/or remote matters, the Trustee's present contention that he failed (or chose not) to address what he now argues are pertinent issues. We agree with the various references cited by Tarro which demonstrate that both parties contemplated that the June–July, 1992 trial would encompass and resolve all disputes between Tarro and the Trustee. Accordingly, we rule that, as between Tarro and the Trustee, the extent of Tarro's security interest was an issue that "constituted, logically or practically, a necessary component of the decision reached," and that said issue is barred

---

3. On appeal, the First Circuit found error in the District Court's decision not to apply collateral estoppel effect to the second litigation based upon the factual findings made in the original litigation. This conclusion strengthens our result herein.

from relitigation by collateral estoppel. *Dennis v. R.I. Hosp. Trust Nat'l Bank,* 744 F.2d at 899.

Notwithstanding this ruling, in this instance where some question may have remained in the Trustee's mind as to the breadth of our September 11, 1992 Decision, and while in our view his present actions are misguided, we do not find that he acted contemptuously in opposing Tarro's demand for the turnover of all funds in his possession. Accordingly, Tarro's Motion for a finding of Contempt is DENIED. For future reference however, we expect this decision to serve as notice to all parties of Tarro's interest in the Estate, *vis-a-vis the Trustee.* This opinion is not intended to affect the rights of other secured creditors.

In view of the above findings and conclusions, we ORDER as follows:

1. The Trustee is authorized to pay forthwith to Modern Plastics, Inc., the sum of $88,451.73;

2. The balance of the Applause receivable, represented to be $17,131.37, should be paid to Tarro, forthwith;

3. The Trustee is authorized to pursue any preference claims (including those against Modern Plastics) which he deems actionable, and any such recoveries shall be property of the Estate, and not subject to Tarro's security interest; and

4. Modern Plastics' Motion for Relief from Stay is GRANTED. Enter Judgment consistent with this opinion.