**ANTILLES CARPET, INC., Plaintiff,**

v.

**MILLIKEN DESIGN CENTER,
et al., Defendants.**

No. CIV. 97–2817(JP).

United States District Court,
D. Puerto Rico.

Oct. 23, 1998.

Carlos E. Rodríguez Quesada, Woods & Woods, San Juan, PR, for Plaintiff.

Pedro J. Polanco, Fiddler, González & Rodríguez, San Juan, PR, for Defendant.

### *ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Defendant's Motion for Summary Judgment and Brief in Support Thereof (**Docket No. 32**) and Plaintiff's Initial Reply to and Opposition to Motion for Summary Judgment and Request for Time to Take Depositions and File Final Reply (**Docket No. 35**). Defendant states that Plaintiff's claims in this litigation should be dismissed for the following reasons: first, Defendant did not terminate its business re-

lationship with Plaintiff and has not violated Act 75, and even if it ended the relationship, Plaintiff did not suffer any damages; second, Defendant has not defamed Plaintiff. (Def.'s Mot. Summ. J. at 2). Defendant argues that the documents and pleadings filed, the Initial Scheduling Conference Order, and the deposition of Stephen J. Hernández indicate that there is no genuine issue of material fact in this litigation. Conversely, Plaintiff argues that there are genuine issues of material facts to be tried in this action. Plaintiff adds that Defendant's Motion "fails to show the documents upon which the motion is based are admissible in evidence, and the facts alleged have not been shown to arise from competent testimony, or based on self serving allegations, which may not be used to show uncontroverted facts." (Pl.'s Initial Reply and Opp'n to Mot. for Summ. J. at 1).

In conformity with the record and stipulations reached by the parties, the following facts are uncontested. The parties began a business relationship in 1988. Although no written agreement memorialized either the agreement or its contours, under the "terms" of the relationship, Plaintiff would take orders of Defendant's Hospitality line of carpets in Puerto Rico from its clients and submit those orders to Defendant. Prior to the commencement of the parties' relationship with respect to its Hospitality line of carpets, they had a similar relationship with Defendant's Modular line of carpeting. That relationship terminated in September 1987.

During parties' agreement to supply and distribute the Hospitality line, Plaintiff would remit partial payment to Defendant. Defendant, in turn, would prepare the product and ship it to Puerto Rico. Upon delivery, Plaintiff would remit any remaining payments due on the orders and would transport the product to its customer's site for installation. Plaintiff sold other products that competed with Defendant's Hospitality line, including Windsor and Bloomsburg Brands. In July 1996, Plaintiff terminated the relationship with Defendant, and Defendant agreed to the termination. The details surrounding the termination, however, are the subject of controversy between the parties and constitute a disputed factual matter in this litigation. Af-

ter the termination with Defendant, Plaintiff's revenue was not affected and lost no clients because of the alleged termination with Defendant. Despite the rupture between the parties, Plaintiff is still one of the top four commercial carpet providers in Puerto Rico.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment serves to "assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). Under Rule 56(c) of the Federal Rules of Civil Procedure, a summary judgment is in order when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); see *Canal Insurance Co. v. Benner*, 980 F.2d 23, 25 (1st Cir.1992). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson* 477 U.S. at 248, 106 S.Ct. 2505.

In a summary judgment motion, the Movant bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the Movant does not bear the burden of proof at trial, as is the case here, it must show no reasonable fact finder could find that the non-Movant has established the requisite elements of its claim. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets his burden of proof, the burden shifts to the non-Movant,

who may not "rest upon mere allegations or denials of . . . the pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Goldman,* 985 at 1116; *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court assesses Parties' arguments within this procedural structure.

## III. DISCUSSION

### A. Act 75 (P.R. Laws Ann. tit. 10 § 278)

Act 75, otherwise known as the Puerto Rico Dealer's Act, states that:

> notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration except for just cause.

P.R. Laws Ann. tit. 10 § 278(a). In the present case, Plaintiff raises its first cause of action under this section. In ruling on Defendant's Motion for Summary Judgment as it relates to Plaintiff's Act 75 claim, the Court must first determine whether there are genuine issues of fact as to three areas: (1) whether an exclusive dealership agreement existed between the parties; (2) if an exclusive agreement existed, whether Defendant violated that agreement; and (3) whether Plaintiff suffered damages.

### 1) Exclusive Dealership Agreement:

■ Plaintiff alleges it had been the exclusive distributor in Puerto Rico for Defendant's products for more than nine years. (Pl.'s Compl. ¶ 4). Plaintiff states that Defendant breached the alleged exclusivity agreement by making direct sales to some of Plaintiff's clients, including Condado Plaza Hotel, and by designating Viva Carpet as a Milliken distributor. (ISC Order at 4).

In its Motion for Summary Judgment, Defendant states that there is no issue of fact regarding the relationship between the parties. Unlike Plaintiff, Defendant claims that no exclusive agreement existed between them. (Def.'s Ans. to the Compl. ¶ 4). Rath-

er, Defendant states that Plaintiff was a non exclusive distributor of Milliken products in Puerto Rico. (*Id.* at ¶ 4). Defendant alleges that due to the non-exclusive nature of the agreement, it was permitted to make any and all sales it might have made in Puerto Rico since it always retained the right to "sell directly to Milliken's corporate clients or national accounts." (Def.'s Mot. Summ. J. at 4). The Court believes that determining whether an issue of fact exists as to the nature of the agreement is essential in ruling on Defendant's Motion for Summary Judgment. If it is uncontroverted that the agreement was not exclusive and that Defendant could sell to Plaintiff's clients and name other distributors, Plaintiff would be without relief.

In ruling on this motion the Court must cull the record to determine whether there is a genuine issue of material fact regarding the existence of an exclusive agreement between the parties. *See Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987). In doing so, the Court considers several documents. For instance, in a May 19, 1986 letter to Jorge Roselló (**docket No. 31**), Milliken's Bill Palmer states that Stephen Hernández, Antilles' President, "is [Milliken's] exclusive dealer in hospitality products." Other documents in the record, however, point in the opposite direction. For instance, Defendant's Statement of Uncontested Facts states that no one at Milliken told Antilles that it would be an exclusive representative. In support of this position Defendant makes reference to Hernández's deposition. (Def.'s Ex. A at 19, lines 1–9). Furthermore, Richard Worrell's letter to Steve Hernández states that "Milliken does not give 'exclusive representation of [its] hospitality program to anyone'." As seen from these documents, there is an issue of fact as to the nature of the agreement established between the parties. *See Biomedical Instrument & Equipment Corp. v. Cordis Corp.,* 797 F.2d 16, 18 (1st Cir.1986); *Whirlpool Corp. v. U.M.C.O. International Corp.,* 748 F.Supp. 1557 (S.D.Fla.1990) (discussing summary judgment motion presented by defendant in a Act 75 case). Thus, because there is a genuine issue of fact regarding the nature of agreement, the Court cannot summarily decide

whether or not Defendant violated the agreement and Act 75.

### 2) Whether Milliken Terminated Its Relationship with Antilles.

■ As to the issue of termination, Defendant states that in July 1996 Plaintiff unilaterally terminated its business relationship with Defendant. (Def.'s Mot. Summ. J. at 4). Defendant notes that the parties agreed upon this fact during the Initial Scheduling Conference. (ISC Order at 3). In the Court's opinion, Defendant's position suggests that if Plaintiff,rather than Defendant, terminated the relationship, then they could not have violated Act 75. Plaintiff, however, takes issue with Defendant's characterization of the termination of their business relationship for the following reasons. First, Plaintiff states that even if it ended the business relationship with Defendant, it was defendant that constructively terminated the relationship by interfering with its clients and naming another distributor. (Pl.'s Initial Reply to and Opp'n to Mot. for Summ. J. at 2). Second, Plaintiff adds that this action does not solely seek relief as a result of the termination of the relationship. Rather, the action is also predicated upon the allegation that Defendant impaired the dealership agreement by making direct sales to Plaintiff's clients. (Order, June 12, 1998, **Docket No. 16**). According to Plaintiff there are two sources of Act 75 violations: Defendant's termination of the agreement and/or Defendant's impairment of the agreement. Thus, even if Plaintiff put an end to its relationship with Defendant, the Court finds that there is an issue of fact as to what constituted the termination of the business relationship between the parties.

Other documents in the record suggest the existence of a factual controversy as to who ended the relationship in question. On one hand, Sam N. Crisler's April 6, 1998 letter to Antilles suggests that the decision to end the relationship was Milliken's. From this letter, it appears that the reason to end this relationship was due to Milliken's "understanding that Antilles ... [was] either sold to, or substantially aligned with a competitive entity." By the same token, other corresponddence suggests the opposite conclusion. In a letter to Hernández, Worrell states that Milliken "accept[s Antilles'] proposal that [they] not continue a business relationship." (Pl.'s Initial Reply to and Opp'n to Mot. for Summ. J. Exh. II). Faced with these contradicting documents, the Court finds that there is still an issue of fact regarding who ended the relationship between the parties.

### 3) Damages

■ Defendant also moves for summary judgment in part because it alleges that there is no genuine issue of fact regarding damages. Defendant correctly argues that if Plaintiff did not suffer damages as a result of the termination or impairment of the agreement, Plaintiff would not have a cause of action under Act 75. *See A.M. Capen's Co., Inc. v. American Trading and Production Corp.,* 973 F.Supp. 247, 269 (D. Puerto Rico 1997); *Marina Industrial, Inc. v. Brown Boveri Corporation,* 114 P.R. Dec. 64, 90 (1983).

■ Defendant reasons that because Plaintiff's revenue was not affected and did not lose any clients, Plaintiff did not suffer damages and is thus without remedy. Defendant argues that Hernández, in his deposition, stated that Antilles' revenue was not affected as a result of the alleged termination of the distribution agreement. (Def.'s Mot. Summ. J. at 5). The Court does not agree with Defendant's analysis. Revenue and clientele are not the only factors that lead to damages in an Act 75 action. *See* P .R. Laws Ann. tit. 10 § 278(b). In calculating damages, a court takes into account the "actual costs incurred by the dealer, the value of the goodwill of dealer's business attributable to the terminated product lines, and the profit generated by the terminated lines over the last five years." *See Ballester Hermanos, Inc. v. Campbell Soup Co.,* 797 F.Supp. 103, 106 (D.Puerto Rico 1992) (Pieras, J.).

In response to Defendant's damages argument, Plaintiff states that Defendant does not cite Hernández's full answer regarding the issue of damages. (Pl.'s Initial Reply to and Opp'n to Mot. for Summ. J. at 3). Plaintiff says Defendant omitted the following excerpt from Hernández's deposition regarding the issue of damages: "when you go to one of

your major clients and say you no longer handle Milliken, which is a major name in the carpet industry, it affects you image wise, and that's why I thought—I think a little bit before I answer yes or no." (Hernández's Dep. at 102, lines 1–5.) Although not explicitly, this answer indicates the existence of an issue of fact regarding the possible loss of goodwill by Plaintiffs. Goodwill constitutes an element in calculating damages. *See* P.R. Laws Ann. tit. 10 § 278(c)(4); *Ballester Hermanos Inc.*, 797 F.Supp. at 106. Thus, there is an issue of fact regarding Plaintiff's damages as they relate to goodwill.

Even though the Court finds Defendant's argument deficient, Plaintiff does not address the issue of damages as they relate to revenue and clientele, which plays a role in determining damages. Plaintiff produces no evidence in its opposition to Defendant's allegation that Plaintiff did not lose any revenue or clients. Plaintiff merely states that it has retained the services of an expert witness regarding the issue of damages. "For this [C]ourt to construe evidence in favor of [P]laintiff, it must be given evidence to construe." *Draft–Line Corp. v. Hon Co.*, 781 F.Supp. 841 (D. Puerto Rico 1991). Thus, this Court finds that there is no genuine issue of material fact as to damages only as they relate to loss of revenue and clientele.

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for Summary Judgment as it relates to the dismissal of the Act 75 action. The Court, however, FINDS that there is no genuine issue of fact regarding the issue of damages ONLY as they relate to loss of revenue or clientele. Plaintiff may go forward with its claim of damages, except for those related to revenue or clientele.

## B. Defamation

■ Plaintiff argues that Defendant, through one of its officers, made defamatory remarks about Plaintiff to Ron DiNola, the General Manager of the Condado Plaza,

Franklin Domínguez, the Chief Engineer of the Condado Plaza, and Jorge Roselló, an independent architect. (ISC Order at 5). Defendant states that Antilles does not have a claim under Puerto Rico defamation law. In support of this assertion, Defendant argues that Plaintiff has not presented any evidence that demonstrates the alleged defamatory remarks by Defendant. (Def.'s Mot. Summ. J. at 7).[1]

Puerto Rico law defines slander as "a false and unprivileged publication other than libel, which ... tends to directly injure [a person] in respect to his office, profession, trade or business, or which by natural consequences causes actual damages." P.R. Laws Ann. tit. 32 § 3143. The first element that a claimant in a defamation action must establish is that a defamatory statement was in fact made. Defendant states that Plaintiff has not offered any evidence indicating that Defendant or any of its representatives made any defamatory statement to DiNola, Domínguez, or Roselló. The Court agrees. Defendant quotes Hernández's deposition by saying that he can only speculate that a defamatory statement was made by Defendant. (Def.'s Mot. Summ. J. at 7 and Exhibit A at 88, lines 22–23). Plaintiff does not rebut Defendant's allegation, and does not offer the Court any evidence to prove that Defendant or any of its representatives in fact made defamatory statements to DiNola, Domínguez, or Roselló. Thus, the Court finds that no genuine issue of fact exists as to whether Defendant made a defamatory statement to the Condado Plaza representatives or Roselló. Because a defamatory statement is an essential element in establishing a prima facie case of defamation, the Court determines that as a matter of law, Plaintiff is without remedy in its cause of action for defamation.

The Court finds that Defendant has demonstrated the absence of a genuine issue of material fact regarding Plaintiff's defamation action. Plaintiff has failed to set forth any specific facts that show that Defendant, through its representatives, made defamato-

1. The Court will not consider the Unsworn Statements by DiNola and Domínguez in its analysis. These documents are inadmissible under Rules 801 and 802 of the Federal Rules of Evidence. (Def. Mot. Summ. J., Exh. B & C) *See Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir.1993) (stating that, in ruling on a summary judgment motion, the Court may not consider inadmissible evidence.); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 16–17 (1st Cir.1986).

ry statements about Plaintiff. The Court hereby **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's defamation claim.

## IV. CONCLUSION

The Court hereby **DENIES** Defendant's Motion for Summary Judgment as it relates to Plaintiff's Act 75 cause. The Court, however, **FINDS** there is no genuine issue of fact regarding damages **ONLY** as they relate to lost revenue and clientele. The Court hereby **GRANTS** Defendant's Motion for Summary Judgment regarding Plaintiff's defamation claim.

IT IS SO ORDERED.